Filed Nov. 8, 1889.

---

No. 13,799.

### WINGATE v. JAMES ET AL.

DECEDENTS' ESTATES.—*Estate Taken by Intestate in Consideration of Love and Affection.—Quantity of.*—Section 2473, R. S. 1881, of the statute regulating the descent and distribution of intestates' estates, providing that " An estate which shall have come to the intestate by gift or by conveyance in consideration of love and affection, shall, if the intestate die without children or their descendants revert to the donor, if living, at the intestate's death," does not create an estate in reversion in the donor, nor does it annex any condition to the estate of the donee, which is a fee simple absolute.

SAME.—*Donor Takes as Heir.—Chargeable with Debts of Donee.*—The donor, on the death of the donee, takes the estate as heir, not as reversioner or remainder man, and charged with his debts.

GUARDIAN AND WARD.—*Death of Ward.—Sale of Real Estate to Pay Debts.— Validity of.—Order of Court.*—Where an order is obtained from the court by a guardian to sell the estate of his ward to pay debts, and the ward having died before the sale, the proceedings are continued, the provisions of the statute (section 2523, R. S. 1881) being complied with, a sale made by the guardian under the order already obtained, and duly confirmed by the court, is a valid sale.

From the Shelby Circuit Court.

*T. B. Adams* and *D. L. Wilson*, for appellant.

*E. K. Adams* and *L. J. Hackney*, for appellees.

MITCHELL, J.—The questions for decision on this appeal arise upon the following facts: On the 4th day of January, 1882, Elizabeth Wilson, for the sole consideration of love and affection, conveyed certain real estate in Shelby county to her infant daughter, Maggie Wilson. Subsequently the guardian of the minor daughter obtained an order from the proper probate court directing him to sell the real estate so conveyed to his ward, the sale appearing to be necessary in order to pay debts incurred in the support and education of the ward. After the order was obtained, but before the sale was made, the ward died intestate, without children or their descendants, leaving her mother surviving, and leaving a personal estate of less than $500 in value. The court, upon due report of the facts by the guardian, thereupon ordered the latter to proceed with the settlement of the estate, without letters of administration. In pursuance of the order theretofore obtained the guardian gave due notice and sold the real estate acquired by the ward as above, the plaintiff becoming the purchaser, at and for the price of $1,300, which was more than the appraised value of the property. The purchaser paid $800 of the purchase-price in cash, and for the balance assumed the payment of a mortgage of $500, which constituted a valid incumbrance on the property. The sale was duly reported to, and confirmed by, the court, and a deed made to the plaintiff, which was duly approved. The money paid to the guardian was all applied to the payment of legal liabilities against the estate of the deceased ward, except $100, which remains in the guardian's hands, and is required to pay the necessary costs and expenses of the guardianship.

Previous to the death of Maggie Wilson, the defendant, James, recovered a judgment against Elizabeth Wilson, which became a lien upon any interest the latter took, by inheritance, in the land upon the death of her daughter. James, claiming that the land reverted to Elizabeth Wilson, free from the debts of her daughter, and that the plaintiff took

no right by her purchase at the guardian's sale, sued out an execution, and was threatening to sell the land as the property of Elizabeth Wilson, and this suit was brought by the appellant, who purchased at the guardian's sale, to enjoin the sheriff from selling the land. The court sustained a demurrer to the complaint, which set forth the foregoing facts in detail, and the correctness of this ruling is the only question involved in the present appeal.

In support of the ruling of the court, it is contended that upon the death of the daughter the land reverted to the mother, discharged of any claims of the creditors of the former. In short, that the estate of the daughter was one to which the law annexed a condition which made it, in effect, nothing more than a life-estate. We do not concur in this view. The argument is based upon section 2473, R. S. 1881, in which it is declared, that : " An estate which shall have come to the intestate by gift or by conveyance, in consideration of love and affection, shall, if the intestate die without children or their descendants, revert to the donor, if living, at the intestate's death, saving to the widow or widower, however, his or her rights therein."

The above section is a part of the statute which regulates the descent and distribution of the estates of persons dying intestate. It in nowise affects or controls the character or quantity of the estate held by an intestate in his lifetime in any real estate of which he may have been seized ; but declares who shall inherit it in certain contingencies upon his death. A conveyance of land made by way of gift, or in consideration of love and affection, creates in the grantee precisely the same estate as a like conveyance made upon a valuable consideration. The effect of the statute is not to reserve to the grantor an estate in reversion, or to annex a condition to the estate of the grantees. It simply declares who shall inherit the estate in case the grantee dies intestate, and without children or their descendants. It is true, the language of the statute is, that the estate shall revert to the donor, if living, in case

the grantee dies intestate without children.  This, however, does not create an estate in reversion in the grantor, so as to vest in him a reversionary interest in the land during the lifetime of the grantee, nor does it annex any condition to the estate of the latter.  It simply declares that under certain contingencies the estate shall return to, or be cast upon, the grantor.   The effect of the statute is to make the grantor, if living, the heir of the grantee in the absence of children or their descendants.   The grantor succeeds to the estate by operation of law upon the death of the owner.   One upon whom the law casts an estate immediately, upon the death of the owner, takes by inheritance as heir.   An estate in reversion commonly exists where the grantor has conveyed less than his whole interest, or estate.  A reversion is a present vested interest, to be enjoyed at some future time upon the happening of some particular event.   A reversion is an estate vested in præsenti, though to take effect in possession and profit in futuro, and may be alienated and charged as an estate in possession.   Cruise Dig. Tit. 17, section 12 ;  9 Am. and Eng. Cycl. of Law, 357.   The conclusion follows, that whatever interest Elizabeth Wilson took in the land at the death of her daughter she took by inheritance, and not as a reversioner, or remainder-man, or otherwise except as heir. She took by descent, and not by purchase.   She took the estate, therefore—as do all others who take by descent cast, unless it be provided otherwise—charged with the debts of the ancestor.

By the conveyance from her mother the ward took an estate which was subject to no condition, limitation, restraint, or right of reversion.   It was an estate over which the grantee had the full power of disposition during her lifetime, and which, if undisposed of at her death, descended to those whom the law appointed as her heirs.   This constituted an estate of inheritance, a fee simple absolute.   The only difference between an estate acquired by gift, or in consideration of love and affection, and one purchased for a valuable

consideration is, that if the donee dies without having disposed of the property, and without leaving certain specified heirs, the law appoints the donor as the heir, upon whom the property is cast. The statute may affect the course of descent in case the property becomes subject to the statute regulating descents, in a possible contingency, but it in nowise affects the character of the estate. Property so acquired is subject to sale for the debts of the donee during his lifetime, and is therefore liable to be sold for a like purpose after his death. Any estate or interest in land which, at the owner's death, descends to his heirs, is, unless the statute either expressly or by necessary implication provides otherwise, liable to sale for the payment of the owner's debts. Sections 2332, 2333, R. S. 1881. There is nothing in the statute to indicate a legislative intent that estates, like that involved in the present case, should be inherited by the donor free from the claims of the donee's creditors. It follows, that the land was liable to be sold for the purpose of making assets to pay the ward's debts.

It is contended, next, that the sale and conveyance by the guardian after the death of the ward were absolutely void, and conferred no title upon the purchaser, notwithstanding the order and confirmation by the court. Section 2523, R. S. 1881, provides, that " Upon the decease of any ward whose personal estate does not exceed five hundred dollars, it shall be the duty of his or her guardian to report the fact of the ward's death, and the amount and condition of the ward's estate, to the proper court; and such guardian shall proceed to settle his or her ward's estate without letters of administration. Claims against said estate shall be filed, litigated, or allowed, and paid, the same as in cases of executors and administrators, and distribution of the estate made under the same rules and regulations."

When the fact of the ward's death, and the amount and condition of her estate were reported, the jurisdiction of the court over the settlement of the ward's estate was continued

precisely as if the ward had remained in life. The proceedings were properly continued in the matter of the guardianship, the guardian proceeding as such to the settlement and distribution of the estate. If, as we must assume the fact was, the sale of the ward's real estate was necessary in order to pay debts, it was within the power of the court to order the sale to be made, and inasmuch as the order had already been made we can see no good reason why it was not entirely regular to sell without procuring another order. At all events, since the land was subject to be sold for the payment of the ward's debts, and since a sale was actually made under an order duly obtained, which was afterwards duly confirmed by a court which had jurisdiction over the subject-matter, the utmost that could be said would be that the proceedings of the court were erroneous. A title acquired under an erroneous judgment can not be ignored or impeached while the judgment stands.

The court erred in sustaining the demurrer to the complaint.

Judgment reversed, with costs.

